UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANN TILLMAN | * CIVIL ACTION NO. 19-12161 "D" (3) |
| Plaintiff | * |
| | * JUDGE WENDY B. VITTER |
| v. | * |
| | * MAG. JUDGE DANA M. DOUGLAS |
| WALMART, INC. | * |
| Defendant | * JURY TRIAL DEMANDED |
| | * |
| | * |

JOINT PRE-TRIAL ORDER

**1.    PRE-TRIAL CONFERENCE**

The Pre-Trial Conference in this matter is currently scheduled for **April 1, 2021 at 12:00 p.m**.  Rec. Doc. 63.

**2.    APPEARANCES**

Eric M. Landry, Loretta O. Hoskins, Brent P. Frederick, and Olga V. Fofanova with Dudley DeBosier Injury Lawyers, on behalf of Plaintiff, Ann Tillman.

Roy C. Beard and P. Sinnott Martin with McCranie, Sistrunk, Anzelmo, Hardy, McDaniel & Welch, on behalf of Defendant, Walmart, Inc.

**3.    DESCRIPTION OF THE PARTIES**

1. Plaintiff: Ann Tillman is a person of the age of majority and resident of the Parish of Tangipahoa, State of Louisiana.

2. Defendant: Walmart, Inc. is a foreign corporation authorized to do business in the Parish of Tangipahoa, State of Louisiana.

**4.    JURISDICTION**

Jurisdiction is based on 28 U.S.C. § 1332, as complete diversity of citizenship exists between the parties with the matter in controversy exceeding $75,000.00, exclusive of interest and

1

costs.

**5.      PENDING MOTIONS / SPECIAL ISSUES**

None.

**6.      BRIEF SUMMARY OF MATERIAL FACTS**

   **a.      Plaintiff, Ann Tillman**

This case arises from a December 13, 2018 slip-and-fall incident at Walmart in Ponchatoula, Louisiana. Plaintiff Ann Tillman was at the store shopping with her cousin, who was undergoing cancer treatment and needed assistance. It had been raining that morning and the weather conditions were wet.  Walmart had implemented its written rainy-day policy, which required the following:

1.  Notify facility management of weather changes;

2.  Monitor floors for water;

3.  Alert customers and employees of wet conditions;

4.  Get additional wet area mats;

5.  Place additional wet area mats at front entrance;

    a.  Mats are required to be flat, have undamaged edges, uncurled corners, and must be long enough to position them in a direction to accommodate customer walking patterns to prevent water from reaching the tile floor.

6.  Place caution cones at entrances and exits;

7.  Provide umbrella bags to customers;

8.  Apply a dry mop;

    a.  Floors should be dry mopped every fifteen minutes or as needed; use a dry mop and bucket to dry wet floors.

9.  Replace wet area mats as necessary;

10. Mats should be swapped out before they become fully saturated. A Shop Vac can be

used to extract excess water.

11. Remove water saturated mats; and

12. Repeat steps 2-10 as necessary.

Walmart's rainy-day policy is in place because wet floors—especially those caused by rainy conditions—are an "unreasonably dangerous condition" and because "wet surfaces pose slip, trip and fall hazards".

The Walmart entrance vestibule is the highest traffic area in the store. Walmart requires that its employees must be vigilant in enforcing its rainy-day policy in high traffic areas of its stores, such as the vestibule entrance. Walmart's employees "are instructed to maintain extra vigilance and care in the entrance vestibule of the store to avoid the accumulation of puddles of water." When it is raining, Walmart employees are supposed to constantly be looking at the whole floor in the entrance vestibule to make sure there is no water. When it is raining, a Walmart employee also is supposed to stay in the entrance vestibule and keep mopping the entire vestibule floor until the rain stops.

On the morning of December 13, 2018, Walmart employee Tommy Davis was responsible for mopping the entrance vestibule area of the store. Tommy Davis wears glasses and has suffered from glaucoma since 2010. Tommy Davis was aware that, apart from water tracked in by customers, water comes inside both doors when it rains. Walmart did not have orange warning cones at the door. Walmart had placed a narrow black mat at the door entrance that did not span the width of the door, allowing water to accumulate on either side. Even though water came inside the entrance door when it rains, Walmart did not swap out the door mat or use a Shop Vac to extract excess water from the mats that morning. Walmart agrees that a saturated mat would be as if there is no mat at all and that a saturated mat could add water to a person's feet. Walmart's

video shows that, for at least an hour before the fall, no one dry mopped the area next to the narrow black floor mat where Ann Tillman fell.  Walmart admits this is a violation of its written rainy-day policy.

Walmart's video shows that its employee Tommy Davis stood right next to the wet floor where Ann Tillman fell for a 13-minute period, and that he left the area 11 minutes before Ann Tillman fell.  Walmart's video shows water on the floor in the hour before the fall, but also specifically at 11:04 a.m.—12 minutes before the fall—when Tommy Davis was standing right next to the wet floor.   Before Tommy Davis walked away from the area right next to the wet floor where Ann Tillman fell, Tommy Davis looked outside to his left and down at the ground just outside the entrance/exit door.  This occurred between 11:04:58 and 11:05:06 a.m.

Ten minutes later, at 11:15:31 a.m., Ann Tillman and her cousin had finished shopping, and Ms. Tillman decided to bring her car to the front of the store so that her cousin would not have to walk outside in rainy conditions. Ms. Tillman briefly exited the store, but then returned inside to get the grocery cart from her cousin. At 11:16:01 a.m., as Ms. Tillman approached her cousin, she stepped onto the narrow floor mat at the door.  When Ms. Tillman took a step to the right, off of the narrow floor mat and onto the tile floor, she slipped on water that had accumulated on the tile floor next to the mat and slammed onto the ground. Ann Tillman was seriously injured as a result of the fall.

Following the slip and fall, Ms. Tillman was transported by ambulance to North Oaks Medical Center Emergency Room with complaints of severe left knee pain and mid-back pain. Physical examination of Ms. Tillman revealed swelling and tenderness of her left knee and tenderness to palpation of her midline thoracic spine. Left knee x-rays showed ***acute comminuted patella fracture with joint effusion, with her patella broken into three pieces***. Ms. Tillman was

put in a knee immobilizer, given crutches, and referred to Dr. Brian Ladner for further evaluation and treatment.

Ms. Tillman saw Dr. Brian Ladner on December 18, 2018 for further treatment of her left knee. Repeat left knee x-rays showed comminuted displaced patella fracture. Because Ms. Tillman's left knee fracture was severe and could not be treated with a cast or splint, Dr. Ladner performed ***open reduction internal fixation surgery*** on December 20, 2018 at North Oaks Medical Center.

On January 11, 2019, Ms. Tillman began physical therapy at Ponchatoula Therapy, where she underwent 36 therapy sessions over the next several months. Physical therapy helped Ms. Tillman to gain mobility; however, it provided only minimal relief of her knee pain.

Ms. Tillman saw Dr. Ladner for follow up in May 2019. She reported that she continued to suffer constant knee pain and could feel the hardware in her knee. After discussing treatment options, Dr. Ladner performed hardware removal surgery on May 31, 2019 at Ochsner North Shore.

Despite having a second surgery, Ms. Tillman continued to have pain in her left knee. Additionally, she developed quadriceps weakness in her left leg and right knee pain due to overuse of her right knee to compensate for her left knee.  According to Dr. Ladner, Ms. Tillman has post-traumatic arthritis in her left knee and compensatory arthritis in her right knee and that both issues are, more likely than not, a result of her fall at Walmart. Ms. Tillman underwent a second round of physical therapy from January 8, 2020 to July 3, 2020 and received multiple Lidocaine and Kenalog injections in both knees.  Around that time, Ms. Tillman had a fall due to left knee weakness and pain.

A functional capacity examination on August 27, 2020 found that Ann Tillman has

impaired knee strength and range of motion.  She exhibited antalgic gait while walking.  It further found she has limitations in balance; in strength and range of motion in her lower extremities; and in her ability to stand, to sit, to perform toe raises and knee squats, to kneel and crouch, to lift floor to waist, to complete a 6-minute walk, to ascend/descend stairs, to push and pull, and to forward bend while standing.

According to Dr. Ladner, Ms. Tillman is a candidate for radiofrequency ablations.  More likely than not, she will need two to three injections per year until she undergoes bilateral total knee replacement surgeries, which have a typical recovery period of one year. More likely than not, she will need these surgeries within the next five years.  More likely than not, Ms. Tillman will require bilateral total knee revision surgeries fifteen years thereafter as the total knee replacement surgery has a lifespan of only fifteen years.  Ms. Tillman also will need to undergo 12 weeks of physical therapy after each total knee replacement surgery.

Ms. Tillman has incurred and will incur in the future significant medical expenses:

### PAST MEDICAL EXPENSES

| PROVIDER | CHARGES |
|---|---|
| Acadian Ambulance | $1,446.10 |
| North Oaks Medical Center | $50,611.24 |
| Ponchatoula Therapy | $11,605.12 |
| Ochsner North Shore | $27,881.98 |
| North Oaks Physical Therapy | $1,736.00 |
| **TOTAL** | **$93,280.44** |

### FUTURE MEDICAL EXPENSES

| PROVIDER | CHARGES |
|---|---|
| Ochsner North Shore – Bilateral Total Knee Arthroplasty | $119,071.96 |
| Ochsner North Shore – Bilateral Total Knee Replacement Revision Surgery | $183,002.36 |
| Ponchatoula Therapy | $7,000.00 |
| **TOTAL** | **$309,074.32** |

b.     **Defendant, Walmart, Inc.**

On December 13, 2019, Plaintiff went shopping at the Walmart store in Ponchatoula, Louisiana. When Plaintiff arrived, it was "drizzling" but not raining enough for her to use an umbrella.  Plaintiff entered the store and went shopping with her friend. After completing their shopping, Plaintiff went to leave the store to get in her car so she could pick up her friend in front of the store.

Plaintiff walked out of the "Exit" doors and stepped onto the wet pavement.  Plaintiff testified that the bottom of her boots got wet when she stepped outside onto the pavement.  Then, when Plaintiff realized that her friend was not following her out, she turned around and re-entered the store through the "Exit" doors.  Upon re-entering the store, Plaintiff stepped off the mat near the "Exit" doors and fell.

Plaintiff testified that she does not remember how she ended up on the floor, and does not know if she slipped or tripped.  Plaintiff did not look to see if the floor was wet.  Plaintiff has no information to suggest how long the floor may have been wet before her fall.  Furthermore, Plaintiff has no information to suggest that a Walmart employee knew that the floor was wet before her fall or that a Walmart employee caused the floor to be wet.

In terms of medical treatment, Plaintiff underwent two knee surgeries after the accident. Plaintiff's treating orthopedist, Dr. Brian Ladner, testified that Plaintiff's right knee pain is caused by a flare up of arthritis and gait change due to her left knee injury and relates Plaintiff's right knee pain to the Walmart accident. Dr. Ladner also stated that Plaintiff will require bilateral knee replacement surgeries and then *possibly* two future revision surgeries 15 years after the replacements. However, Dr. Lander believes it is less probable than not that Plaintiff, who would be 85 years old at the time, would undergo two future knee replacement revision surgeries.

Accordingly, Walmart denies all responsibility and liability for Plaintiff's injuries and damages.

**7.    UNCONTESTED MATERIAL FACTS**

1. On December 13, 2018, Ann Tillman fell on the premises of Walmart Supercenter, Store No. 4129, located at 1331 Hwy 51, Ponchatoula, in the Parish of Tangipahoa, State of Louisiana (the "Walmart").

2. Ann Tillman's fall occurred in the entrance vestibule of the Walmart.

3. Ann Tillman was at the Ponchatoula Walmart on December 13, 2018 to shop with her cousin who needed assistance shopping due to undergoing cancer treatment.

4. After Ann Tillman and her cousin finished shopping, Ms. Tillman left the store through the exit door, with the intent to bring her car to the front so that her cousin, who was undergoing cancer treatment, would not have to walk outside in the rainy conditions.

5. After Ann Tillman exited the Walmart, she stepped outside onto the wet pavement outside the store. Ms. Tillman then returned inside through the exit door to get the grocery cart from her cousin.

6. As Ms. Tillman approached her cousin, she fell.

**8.    CONTESTED ISSUES OF FACT**

1. Whether there was a condition present at the Walmart store that presented an unreasonable risk of harm to Plaintiff and that risk of harm was reasonably foreseeable.

2. Whether Walmart, Inc. had actual notice of the wet floor prior to Ann Tillman's fall.

3. Whether Walmart, Inc. had constructive notice of the wet floor, prior to Ann Tillman's fall.

4. Whether Walmart, Inc. failed to exercise reasonable care under the circumstances.

5. On December 13, 2018, it had been raining the entire morning and the weather conditions

were wet.

6.  On December 13, 2018, Walmart, Inc. had implemented its rainy-day policy.

7.  Walmart, Inc.'s written rainy-day policy required the following:

    1.  Notify facility management of weather changes;

    2.  Monitor floors for water;

    3.  Alert customers and employees of wet conditions;

    4.  Get additional wet area mats;

    5.  Place additional wet area mats at front entrance;

        a.  Mats are required to be flat, have undamaged edges, uncurled corners, and must be long enough to position them in a direction to accommodate customer walking patterns to prevent water from reaching the tile floor.

    6.  Place caution cones at entrances and exits;

    7.  Provide umbrella bags to customers;

    8.  Apply a dry mop;

        a.  Floors should be dry mopped every fifteen minutes or as needed; use a dry mop and bucket to dry wet floors.

    9.  Replace wet area mats as necessary;

    10. Mats should be swapped out before they become fully saturated. A Shop Vac can be used to extract excess water.

    11. Remove water saturated mats; and

    12. Repeat steps 2-10 as necessary.

8.  Walmart's rainy-day policy is in place because wet floors—especially those caused by rainy conditions—are an "unreasonably dangerous condition" and because "wet surfaces

pose slip, trip and fall hazards".

9.  The Walmart entrance vestibule is the highest traffic area in the store.

10. Walmart requires that its employees must be vigilant in enforcing its rainy-day policy in high traffic areas of its stores, such as the entrance vestibule where Ann Tillman fell.

11. Walmart's employees "are instructed to maintain extra vigilance and care in the entrance vestibule of the store to avoid the accumulation of puddles of water."

12. When it is raining, Walmart employees are supposed to constantly be looking at the whole floor in the entrance vestibule to make sure there is no water.

13. When it is raining, a Walmart employee is supposed to stay in the entrance vestibule and keep mopping the vestibule entrance floor until the rain stops.

14. On the morning of December 13, 2018, Walmart employee Tommy Davis was responsible for mopping the entrance vestibule area of the store.

15. Walmart employee Tommy Davis wears glasses and has suffered from glaucoma since 2010.

16. Walmart employee Tommy Davis was aware that, apart from water tracked in by customers, water comes inside both doors when it rains.

17. Walmart's video shows that its employee Tommy Davis stood next to the wet floor where Ann Tillman fell for a 13-minute period, and that he left the area 11 minutes before Ann Tillman fell.

18. Walmart's video shows water on the floor in the hour before the fall, but also specifically at 11:04 a.m.—12 minutes before the fall—when Tommy Davis was standing next to the wet floor.

19. Before Walmart employee Tommy Davis walked away from the wet floor where Ann

Tillman fell, Tommy Davis looked outside to his left and down at the ground just outside the entrance/exit door.  This occurred between 11:04:58 and 11:05:06 a.m.

20. Ten minutes later, at 11:15:31 a.m., Ann Tillman and her cousin had finished shopping and Ms. Tillman decided to bring her car to the front of the store so that her ill cousin would not have to walk outside in rainy conditions.

21. Ms. Tillman briefly left the store through the entrance/exit door, but then returned inside to get the grocery cart from her cousin.

22. At 11:16:01 a.m., as Ms. Tillman approached her cousin, she stepped onto the narrow mat at the door.  When Ms. Tillman took a step off of the narrow mat onto the tile floor, she slipped on water that had accumulated on the tile floor next to the mat and slammed onto the ground.

23. There was water on the floor where Ann Tillman fell.

24. Walmart's internal claims documents state that the agent involved in the incident was "Water" in the entrance vestibule to the store.

25. Walmart did not mop the area where Ms. Tillman fell for at least an hour before her fall, which Walmart admits is a violation of its written rainy-day policy.

26. Walmart is unaware of any action Ann Tillman took that contributed to her slip and fall.

27. The wet floor where Ann Tillman fell was a condition that presented an unreasonable risk of harm to Ms. Tillman and that risk of harm was reasonably foreseeable.

28. As a result of the fall, Plaintiff, Ann Tillman, sustained injury to her left knee.

29. Walmart failed to adhere to its own written rainy-day policies on December 13, 2018.

30. Walmart did not have someone at the door alerting customers of the wet conditions.

31. Walmart did not have orange warning cones at the Exit door where Ann Tillman fell.

32. The door mat placed at the Exit door where Ann Tillman fell was narrow and did not span the width of the door, allowing water to accumulate on either side.

33. The door mat was not of a sufficient size to accommodate customer walking patterns and to prevent water from reaching the tile floor inside the door.

34. Walmart did not swap out the door mats or use a Shop Vac to extract excess water from the mats, even though water came inside the entrance door when it rains.

35. Walmart agreed that a saturated mat would be as if there is no mat at all and that a saturated mat could add water to a person's feet.

36. For at least an hour before the fall, Walmart failed to dry mop the area where Ann Tillman fell.  Walmart admits that was a violation of its written rainy-day policy.

37. As a result of the fall, Ann Tillman, sustained an acute comminuted patella fracture with joint effusion, with her patella broken into three pieces.

38. As a result of the fall, Ann Tillman has undergone two knee surgeries.

39. As a result of the fall, Ann Tillman has undergone physical therapy.

40. As a result of the fall, Ann Tillman has undergone injections in both of her knees.

41. As a result of the fall, Ann Tillman is a candidate for radiofrequency ablations in her knee.

42. As a result of the fall, Ann Tillman will need two to three knee injections per year.

43. As a result of the fall, Ann Tillman will need to undergo bilateral total knee replacement surgeries, followed by twelve weeks of physical therapy following each knee replacement surgery.

44. As a result of the fall, Ann Tillman will need to undergo bilateral total knee replacement revision surgeries, followed by twelve weeks of physical therapy following each knee replacement surgery.

9.      **CONTESTED ISSUES OF LAW**

     None at this time.

10.     **EXHIBIT LISTS**

    **a.      Plaintiff's Exhibits**

1. Records, imaging, and bills of any/all medical providers who have rendered services to or on the behalf of Plaintiff, Ann Tillman, in the past and expected future, including but not limited to the following:

    a. North Oaks Health System;
    b. Acadian Ambulance Service;
    c. Ochsner Health Center - Covington;
    d. Ponchatoula Therapy; and
    e. Any and all other records and/or bills from any and all other health care providers that have treated Plaintiff for the injuries as a result of this incident at any time during this litigation.

2. Medical expense recapitulation;

3. Records of impairment testing;

4. Estimates for future treatment recommended by plaintiff's healthcare providers;

5. Any curriculum vitae of plaintiff's health care providers;

6. Walmart surveillance videos and photographs;

7. Walmart policies and procedures, including but not limited to Standard Operating Procedure regarding vestibules and inclement weather;

8. Walmart safety and training manuals/materials;

9. Walmart personnel and employment file of Tommy Davis;

10. Walmart's Claim Run;

11. Walmart claims files for Walmart Claim Nos. 8666813, 941485, 8102015, 8457448, 8555736, 8568410;

12. Associate Witness Statement by Ryan Nicolosi, dated December 13, 2018;

13. Customer Incident Report by plaintiff, Ann Tillman, dated December 13, 2018;

14. Customer Incident Report by witness, Mary Walton, dated December 13, 2018;

15. Evidence Collection Sheet, dated December 20, 2018;

16. Video Request Form: Customer Incident, dated December 14, 2018;

17. Evidence Tag form (videos and photos), dated December 14, 2018;

18. Witness Statement, by Amanda Hidalgo, dated December 14, 2018;

19. Walmart's discovery responses and document productions;

20. Any document subpoenaed or obtained pursuant to authorization by any party to this action;

21. Any and all documents and items that may be discovered between now and the time of trial to which plaintiff does not object;

22. Any exhibit listed by defendant to which plaintiff does not object;

23. Any and all documents not reasonably foreseeable at this time, which may be identified or discovered in upcoming discovery or investigation;

24. Any documents necessary for impeachment or rebuttal and other documents needed to address issues unanticipated or not yet raised;

25. Any and all video, animation, simulation, surveillance, photographs, diagrams, sketches, etc. of the incident, the scene of the incident, plaintiff's injuries, Plaintiff's treatment, etc.;

26. Any demonstrative aid or evidence to be used at trial;

27. Any statement, depositions, pleadings or documents produced, received or filed in this proceeding;

28. Any and all documents not previously and specifically identified herein produced as a result of discovery request;

29. Any and/or all video/non-video trial deposition(s) and hard copy(ies) of any medical providers that have treated Plaintiff; and

30. Any documents or things listed or used by any other party.

**Defendant's Exhibits**

    1.   Customer Incident Report of Ann Tillman;

2.  Customer Incident Report prepared by Mary Walton;

3.  Witness Statement of Ryan Nicolosi;

4.  Video Request Form;

5.  Statement of Amanda Hidalgo;

6.  Evidence Collection Sheet;

7.  Evidence Tag;

8.  Five (5) photographs of scene;

9.  DVD containing six (6) store video clips;

10. Any discovery responses or documents produced by subpoena; – Plaintiff objects as Walmart did not timely disclose this as an exhibit.

11. Any documents necessary for impeachment or rebuttal and other documents needed to address issues unanticipated or not yet raised; and – Plaintiff objects to the extent Walmart intends to submit any investigator's surveillance video or photographs of Plaintiff as not timely disclosed in response to written discovery following Plaintiff's 03/02/2020 deposition or in accordance with the Court's Scheduling Order.

12. Any documents or things listed or used by any other party.

**11.   DEPOSITIONS BEING OFFERED INTO EVIDENCE**

All witnesses are expected to testify live at trial.

**12.   DEMONSTRATIVE EXHIBITS**

**a.  Plaintiff**

1.  Blowups of documents produced by Walmart;

2.  Video produced by Walmart of the vestibule entrance and the immediate exterior of the store and the slip and fall, as well as screenshots of same;

3.  PowerPoint presentation;

4.  Anatomical models, diagrams, drawings, and other renderings of the human body, parts thereof and/or structures therein, including bones, nerves, muscles, and neurological, circulatory, and other systems of the body;

5.  Videos showing surgical procedures performed and to be performed;

6.  Medical expense recapitulation;

7.  Timeline of events;

8.  Timeline of medical treatment.

**b.  Defendant**

1.  Walmart may use blow-ups of any of the documents or videos listed in Walmart's Exhibit

   List.

**13.   <u>WITNESS LISTS</u>**

**Plaintiff's Will Call Witnesses**

1.  Ann Tillman
    600 South 3rd Street
    P.O. Box 2367
    Ponchatoula, LA 70454
    **Re: facts, injuries, and damages**

2.  Walmart Corporate Representative Ryan Nicolosi
    Walmart Store #4129
    1331 Hwy 51
    Ponchatoula, LA 70454
    **Re: facts, facts on cross-exam**

3.  Tommy Davis
    Walmart Store #4129
    1331 Hwy 51
    Ponchatoula, LA 70454
    **Re: facts, facts on cross-exam**

4.  Brian Ladner, MD, orthopedic surgeon
    North Oaks Health System
    15790 Paul Vega M.D. Drive
    Hammond, LA 70403
    **Re: testimony regarding plaintiff's prior condition and condition subsequent to the
    incident, diagnosis of injuries post incident, causation, treatment and prognosis of
    plaintiff as a result of the injuries received in this incident**

5.  Scott H. Higgs, MPT, physical therapist
    Ponchatoula Therapy

132 South 6th Street
Ponchatoula, LA 70454
**Re: testimony regarding plaintiff's prior condition and condition subsequent to the incident, diagnosis of injuries post incident, causation, treatment and prognosis of plaintiff as a result of the injuries received in this incident**

6. Joyce Baughn
   18593 Sisters Road
   Ponchatoula, LA 70454
   **Re: facts, injuries, damages, limitations, and conditions of Plaintiff, Ann Tillman, before and after the incident**

7. Roslyn Kirk
   402 South 8th Street
   Ponchatoula, LA 70454
   **Re: facts, injuries, damages, limitations, and conditions of Plaintiff, Ann Tillman, before and after the incident**

8. Hillary Cloy
   2020 Lakeside Circle
   Ponchatoula, LA 70454
   **Re: facts, injuries, damages, limitations, and conditions of Plaintiff, Ann Tillman, before and after the incident**

9. A Representative of North Oaks Health System
   15790 Paul Vega M.D. Drive
   Hammond, LA 70403
   **Re: charges for recommended surgical procedures**

10. A Representative of Ponchatoula Therapy
    132 South 6th Street
    Ponchatoula, LA 70454
    **Re: charges for physical therapy necessary following total knee replacement surgeries**

**Plaintiff's May Call Witnesses**

11. Celina Bickhman
    275 Methvin Drive
    Ponchatoula, LA 70454
    **Re: facts, injuries, damages, limitations, and conditions of Plaintiff, Ann Tillman, before and after the incident**

12. Representative of Walmart Inc.
    CT Corporation System
    3867 Plaza Tower Drive

      Baton Rouge, LA 70816
      **Re: facts, facts on cross-exam**

13. Mike York
      2150 Water Oak
      Slidell, LA 70461
      **Re: facts, facts on cross-exam**

14. Stanley Brumfield
      307 Alexander Drive
      Hammond, LA 70401
      **Re: facts, facts on cross-exam**

15. Kathy Addison
      Walmart Store #4129
      1331 U.S.-51
      Ponchatoula, LA 70454
      **Re: facts, facts on cross-exam**

16. Claims adjuster for Claims Management, Inc.
      P.O. Box 14731
      Lexington, KY 40512

17. James Vannada
      Walmart Store #4219
      1331 U.S. – 51
      Ponchatoula, LA 70454
      **Re: facts, facts on cross-exam**

18. Amanda Hidalgo
      Walmart Store #4219
      1331 U.S. – 51
      Ponchatoula, LA 70454
      **Re: facts, facts on cross-exam**

19. Polly Hamm
      Walmart Store #4219
      1331 U.S. – 51
      Ponchatoula, LA 70454
      **Re: facts, facts on cross-exam**

20. Ezekiel Landix
      Walmart Store #4219
      1331 U.S. – 51
      Ponchatoula, LA 70454
      **Re: facts, facts on cross-exam**

21. Kenneth Paul
    Walmart Store #4219
    1331 U.S. – 51
    Ponchatoula, LA 70454
    **Re: facts, facts on cross-exam**

22. Natisha Gibson
    Walmart Store #4219
    1331 U.S. – 51
    Ponchatoula, LA 70454
    **Re: facts, facts on cross-exam**

23. Rachel E. Shard, MD, emergency medicine
    North Oaks Health System
    15790 Paul Vega M.D. Drive
    Hammond, LA 70403
    **Re: testimony regarding plaintiff's prior condition and condition subsequent to the
    incident, diagnosis of injuries post incident, causation, treatment and prognosis of
    plaintiff as a result of the injuries received in this incident**

24. Michael R. Christner, MD, emergency medicine
    North Oaks Health System
    15790 Paul Vega M.D. Drive
    Hammond, LA 70403
    **Re: testimony regarding plaintiff's prior condition and condition subsequent to the
    incident, diagnosis of injuries post incident, causation, treatment and prognosis of
    plaintiff as a result of the injuries received in this incident**

25. Kathryn O. Dorhauer, MD, anesthesiology
    North Oaks Health System
    15790 Paul Vega M.D. Drive
    Hammond, LA 70403
    **Re: testimony regarding plaintiff's prior condition and condition subsequent to the
    incident, diagnosis of injuries post incident, causation, treatment and prognosis of
    plaintiff as a result of the injuries received in this incident**

26. Nicholas Munlin
    Acadian Ambulance Service
    P.O. Box 98000
    Lafayette, LA 70509
    **Re: testimony regarding plaintiff's prior condition and condition subsequent to the
    incident, diagnosis of injuries post incident, causation, treatment and prognosis of
    plaintiff as a result of the injuries received in this incident**

27. Nicholas P. Goyeneche, MD, sports medicine

Ochsner Health Center – Covington
1000 Ochsner Blvd.
Covington, LA 70433
**Re: testimony regarding plaintiff's prior condition and condition subsequent to the incident, diagnosis of injuries post incident, causation, treatment and prognosis of plaintiff as a result of the injuries received in this incident**

28. Malik C. Spady, MD, rheumatologist
Ochsner Health Center – Covington
1000 Ochsner Blvd.
Covington, LA 70433
**Re: testimony regarding plaintiff's prior condition and condition subsequent to the incident, diagnosis of injuries post incident, causation, treatment and prognosis of plaintiff as a result of the injuries received in this incident**

29. David Scott, D.O.
Neuro Muscular Medical Associates
42078 Veterans Avenue, Ste. G
Hammond, LA 70403
**Re: testimony regarding plaintiff's prior condition and condition subsequent to the incident, diagnosis of injuries post incident, causation, treatment and prognosis of plaintiff as a result of the injuries received in this incident**

30. Any physician who is going to perform radiofrequency ablations;

31. Any healthcare provider who will perform impairment and/or disability rating testing;

32. Any other witness necessary to discuss plaintiff's injuries, limitations, condition of plaintiff before and after the incident, and damages of plaintiff;

33. Any witness needed to testify regarding facility costs and professional charges for medical treatment;

34. Any witness needed to authenticate any documents or exhibits that cannot be agreed by stipulation;

35. Any witness necessary for impeachment or rebuttal, and other witnesses needed to address issues unanticipated or not yet raised;

36. Any witness listed by defendants to whom plaintiff does not object;

37. Any witness not reasonably foreseeable at this time, whose identity and/or address may be revealed in upcoming discovery or investigation. Any such witness will be listed promptly;

**b.     Defendant's Witnesses**

1. Ryan Nicolosi, Assistant Manager, Walmart Store #4129
   1331 U.S.-51, Ponchatoula, LA 70454
   Re: facts and investigation of Plaintiff's accident

2. Mike York, former Manager
   l/k/a: 2150 Water Oak, Slidell, LA 70461
   Re: facts and investigation of Plaintiff's accident

3. Stanley Brumfield, former Assistant Manager
   l/k/a: 307 Alexander Drive, Hammond, LA 70401
   Re: facts and investigation of Plaintiff's accident

4. Amanda Hildago, Asset Protection Associate,, Walmart Store #4129
   1331 U.S.-51, Ponchatoula, LA 70454
   Re: facts and investigation of Plaintiff's accident

5. Kathy Addison, Customer Service Manager, Walmart Store #4129
   1331 U.S.-51, Ponchatoula, LA 70454
   Re: facts and investigation of Plaintiff's accident

6. Ezekiel Landix, Maintenance Associate, Walmart Store #4129
   1331 U.S.-51, Ponchatoula, LA 70454
   Re: facts and investigation of Plaintiff's accident

7. Kenneth Paul, Maintenance Associate, Walmart Store #4129
   1331 U.S.-51, Ponchatoula, LA
   Re: facts and investigation of Plaintiff's accident

8. Natisha Gibson, People Greeter, Walmart Store #4129, 1331 U.S.-51
   Ponchatoula, LA 70454
   Re: facts and investigation of Plaintiff's accident

9. Any witness necessary for impeachment or rebuttal, and other witnesses needed to address issues unanticipated or not yet raised –Plaintiff objects to the extent Walmart intends to submit the testimony of any investigator who surveilled Plaintiff as not being timely disclosed in response to written discovery following Plaintiff's 03/02/2020 deposition or in accordance with the Court's Scheduling Order.

10. Any witness listed by Plaintiff to whom Walmart does not object.

**14.**     **JURY/NON-JURY**

This matter will be tried as to all issues before a jury.

Proposed jury instructions, special jury interrogatories, and voir dire shall be electronically filed with the Court not later than **five** working days prior to the trial date.

15. **LIABILITY/QUANTUM**

The issue of liability <u>will not</u> be tried separately from that of quantum.

16. **OTHER MATTERS**

None known at this time.

17. **TRIAL**

Trial in this matter has been continued, to be reset at the Pre-Trial Conference scheduled for April 1, 2021 at 12:00 p.m. Rec. Doc. 63. The parties estimate the trial to last approximately 3 days.

18. **STATEMENT ON PRE-TRIAL ORDER**

This Joint Pre-Trial Order has been formulated after conference at which counsel for the respective parties have appeared via video conference. Reasonable opportunity has been afforded to counsel for correction, or additions, prior to signing. Hereafter, this order will control the course of trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

19. **STATEMENT ON SETTLEMENT**

On March 18, 2021, the parties participated in a settlement conference with Magistrate Judge Dana Douglas. Rec. Doc. 64. A settlement could not be confected at that time. Rec. Doc. 65.


_____
**HON. WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

Respectfully submitted:

**DUDLEY DEBOSIER INJURY LAWYERS, PLC**

*/s/*_____
**LORETTA O. HOSKINS, Bar Roll No. 30558**
**ERIC M. LANDRY, Bar Roll No. 37761**
**BRENT P. FREDERICK, Bar Roll No. 25053**
**OLGA V. FOFANOVA, Bar Roll No. 37121**
622 Baronne Street
New Orleans, Louisiana 70113
Telephone: (504) 433-3333
Facsimile: (504) 528-3069
*Counsel for Plaintiff, Ann Tillman*


**McCRANIE, SISTRUNK, ANZELMO, HARDY**
**McDANIEL & WELCH**

*/s/      P. Sinnott Martin*_____
**ROY C. BEARD, Bar Roll No. 17461**
**P. SINNOTT MARTIN, Bar Roll No. 37218**
909 Poydras Street, Ste. 1000
New Orleans, LA 70112
Telephone: (504) 831-0946
*Attorneys for Defendant, Walmart, Inc.*

## CERTIFICATE OF SERVICE

   **I HEREBY CERTIFY** that on the 25th day of March, 2021, a copy of the foregoing pleading was sent to all counsel of record by operation of the Court's CM/ECF system.

*/s/ Loretta O. Hoskins*_____
**LORETTA O. HOSKINS**